UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ELVER PEREZ-SUAREZ,

Petitioner,

v.

BRIAN ENGLISH,

Respondent.

CAUSE NO. 3:26-CV-433-CCB-SJF

## OPINION AND ORDER

Immigration detainee Elver Perez-Suarez, representing himself, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. ECF 1. The respondent has answered the petition, and Perez-Suarez has filed a reply. ECF 7, ECF 10. The petition is ready to be decided.

## BACKGROUND

Perez-Suarez is a Cuban citizen who entered the United States in 2008. ECF 7-1 at 2-5. On March 8, 2022, he was convicted of conspiracy to commit wire fraud in federal court. *Id.* On April 19, 2023, an immigration judge ordered him removed to Cuba. *Id.* at 6-9. On August 29, 2025, Perez-Suarez entered immigration detention. ECF 7-2. On September 24, 2025, Immigration and Customs Enforcement (ICE) attempted to remove Perez-Suarez to Mexico, but he refused to comply. *Id.* On March 4, 2026, ICE notified him that it would remove him to Mexico, but Perez-Suarez stated that he would not comply with removal to Mexico. *Id.* On April 14, 2026, ICE issued another notice to

Perez-Suarez regarding removal to Mexico. *Id.* He is currently held at the Miami

Correctional Facility. *Id.*

SUBJECT MATTER JURISDICTION

The respondent first argues that the court lacks subject matter jurisdiction over

Perez-Suarez's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). This court has

thoroughly considered its jurisdiction to review post-removal-order immigration

detention. For the reasons previously stated, jurisdiction is secure. *See Liang, v. English*,

No. 3:25CV1052 DRL-SJF, 2026 WL 835853, at *1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.);

*Pho v. Noem*, No. 3:25-CV-977-CCB-SJF, 2025 WL 3750684, at *1-*4 (N.D. Ind. Dec. 29,

2025) (Brisco, J.) (discussing § 1252(g)).

MERITS

Regarding the merits of the petition, the respondent first argues that Perez-

Suarez's detention is lawful under 8 U.S.C. § 1231 because the statute authorizes

detention pending execution of a removal order. However, beyond the "removal

period,"[1] which for Perez-Suarez ended in November 2025, continued detention is

authorized only for certain noncitizens delineated in § 1231(a)(6) and only as long as

removal is reasonably foreseeable. *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001)

("[O]nce removal is no longer reasonably foreseeable, continued detention is no longer

authorized by statute."). The Supreme Court has instructed that once removal is not

---

[1] The removal period begins on the latest of three events: (1) the date the removal order becomes administratively final, (2) the date of a reviewing court's final order if the noncitizen seeks judicial review and the court orders a stay of removal, or (3) upon the noncitizen's release from non-immigration detention or confinement. 8 U.S.C. § 1231(a)(1)(B).

2

reasonably foreseeable, "the court should hold continued detention unreasonable and no longer authorized by statute," though any release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 699–700.

In *Zadvydas*, the Supreme Court adopted a "presumptively reasonable period of detention" of six months in recognition of the Executive Branch's primary responsibility in foreign policy matters and the sometimes sensitive nature of repatriation negotiations that may call for difficult judgments regarding whether removal is reasonably foreseeable. *Zadvydas*, 533 U.S. at 689. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. Because Perez-Suarez has been in detention for longer than six months, the court turns to whether his removal is reasonably foreseeable.

To start, the Warden identifies Mexico as the only country under consideration for removal. The government attempted to remove Perez-Suarez to Mexico in September 2025, but was foiled by his refusal to comply with the removal. Further, the government has continued its efforts to remove him to Mexico only for Perez-Suarez to refuse to cooperate. It thus appears that the government's efforts to remove Perez-Suarez to Mexico would have been and would yet be successful but for Perez-Suarez's refusal to cooperate.

In response, the Warden argues that Perez-Suarez's refusal to cooperate with removal efforts should preclude any finding that his removal will not occur within the reasonably foreseeable future. The first federal appellate case to have addressed this issue appears to be *Pelich v. I.N.S.*, 329 F.3d 1057 (9th Cir. 2003). There, the immigration detainee refused to complete an application for travel documents to Poland, and Poland expressly required the information on the application to determine whether it would issue him travel documents. *Id.* at 1059. The immigration detainee further frustrated removal efforts by providing the government with conflicting information about his identity and family. *Id.* The Ninth Circuit reasoned that "the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock" and held that "an alien cannot assert a viable constitutional claim when his indefinite detention is due to his failure to cooperate with the [government's] efforts to remove him." *Id.* at 1060-61.

Though neither the Supreme Court nor the Seventh Circuit appear to have addressed this precise issue in the immigration context, this seems a rather sensible rule—after all, one cannot typically create or self-inflict an alleged constitutional or other harm all one's own and then maintain standing to complain about it. *See, e.g., Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013); *see also Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021) (injury must be fairly traceable to defendant for standing to exist). Several federal courts that have addressed this concern in immigration cases have unanimously agreed with the Ninth Circuit. *See, e.g., Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1314 (11th Cir. 2019); *Hook v. Lynch*, 639 F. Appx. 229 (5th Cir. 2016); *Kovalev v.*

*Ashcroft*, 71 F. Appx. 919, 924 (3d Cir. 2003); *Souleymane v. Olsen*, 2026 WL 785596, 4 (S.D. Ind. Mar. 20, 2026). This rule is also consistent with 28 U.S.C. § 1231(a)(1)(C), which extends the removal period if an individual refuses to cooperate with removal efforts, and 8 C.F.R. § 241.5(a)(2), which requires such cooperation as a mandatory condition of supervised release.

Perez-Suarez argues that his removal to Mexico is inappropriate for two reasons. First, he argues that the government should not remove him to Mexico because it would contravene the immigration judge's order to remove him to Cuba. The applicable regulation requires the government to attempt removal to the countries designated in the order of removal, but if removal to those countries is not possible, "the order of the immigration judge does not limit the authority of the Department of Homeland Security to remove the alien to any other country as permitted by [Section 1231(b)]." 8 C.F.R. § 1240.12(d). Perez-Suraez concedes that his removal to Cuba is not possible, so the immigration order does not bar the government from attempting to remove him to other countries.

Next, in his reply brief, Perez-Suarez contends that the government has not afforded him a "credible-fear interview" despite his request. ECF 10 at 1. He represents that "he lived in Mexico previously and was subject [to persecution] by the drug cartels and also the National Mexican Forces, and he will be dead as soon as he lands in Mexico." *Id.* "A non-citizen may not be removed to a country if his life or freedom would be threatened in that country because of the petitioner's race, religion, nationality, membership in a particular social group, or political opinion." *Mohammed v.*

*Blanche*, 2026 WL 1229058, at *4 (7th Cir. May 5, 2026) (quoting 8 U.S.C. § 1231(b)(3)(A)).

"The Convention Against Torture, an international convention to which the United

States is a party, forbids the return of "a person to another State where there are

substantial grounds for believing that he would be in danger of being subjected to

torture." *Rodriguez-Molinero v. Lynch*, 808 F.3d 1134, 1135 (7th Cir. 2015). According to

an internal memorandum from the Secretary of Homeland Security, "In cases where the

alien affirmatively states a fear [under the Convention against Torture or Section

1231(b)(3)(A)], USCIS will generally screen the alien within 24 hours of referral from the

immigration officer." ECF 7-1 at 26-27.

Significantly, the record does not speak to whether the government has afforded

Perez-Suarez an opportunity for a fear-based interview, and the Warden has not had an

opportunity to address this issue given the manner in which it was presented. The court

would be reluctant to find that Perez-Suarez has failed to cooperate with efforts to

remove him to Mexico if he has been denied an opportunity for a fear-based interview

in connection with Mexico, particularly given the serious nature of his allegations. *See*

*Mai v. Hernandez*, 2026 WL 1328257, at *2 (W.D. Wash. May 13, 2026) ("Petitioner's

refusal to pick a country from a list provided to him . . . is not non-cooperation because .

. . Petitioner is allowed to raise concerns and express fear over being removed to a third

country."); *Abramian v. Bondi*, 2026 WL 166907, at *6 (C.D. Cal. Jan. 16, 2026) ("[The

petitioners] can hardly be faulted for objecting now they have learned ICE seeks to

remove them to Eritrea—a third country with which they have no connections and in

which they fear harm."). Consequently, the court will seek further briefing on this issue

before resolving the habeas petition. Specifically, the Warden should address whether Perez-Suarez has requested or received a fear-based interview in connection with Mexico. If he has not received such an interview, the Warden should further address whether the government is willing to provide him with one.

For these reasons, the court:

(1) **ORDERS** the Warden of the Miami Correctional Facility to file a response consistent with this Order by May 26, 2026; and

(2) **ORDERS** that Elver Perez-Suarez may file a reply by June 12, 2026.

SO ORDERED on May 18, 2026

_/s/ Cristal C. Brisco_
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT